# PETITION OF THE PROSPECT BREWING CO.

FOR A MANDAMUS TO THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued June 5, 1889—Decided June 28, 1889.

[To be reported.]

1. In granting licenses to wholesale dealers, brewers, distillers, etc., under the act of May 24, 1887, P. L. 194, the Court of Quarter Sessions of Philadelphia county has not the large discretion conferred upon it by the retail act of May 13, 1887, P. L. 108: Pollard's Petition, ante, 507; Nordstrom's Petition, post, 542; Knarr's Petition, post, 554.
2. The discretion conferred upon that court by the act of May 24, 1887, is a qualified and limited discretion, and is confined to the inquiry whether

Statement of Facts.

the applicant for a wholesale license is a citizen of the United States, of temperate habits, and of good moral character.

3. Where no objection or remonstrance appears on the record of the case, alleging that the petitioner was disqualified in respect of either of the above grounds, citizenship, temperate habits, or moral character, the order of the court refusing the license to the petitioner will be reversed.

4. The said act of May 24, 1887, confers upon that court no power to determine the fitness of a person to receive a wholesale license upon the findings of the court upon other matters outside of the qualifications mentioned, to wit: citizenship, habits or moral character.

5. The return to a writ of alternative mandamus requires the greatest possible certainty; not merely certainty to a common intent, or certainty to a certain intent in general, but certainty to the greatest possible intent; or, as it is sometimes called, certainty to a certain intent in every particular.

6. A return to such writ directed to the Court of Quarter Sessions refusing the petition of a corporation for a brewer's wholesale license, setting forth that an averment of the relator's petition was incomplete, inaccurate and misleading, but not showing in what respect; that the company had conducted its business in violation of law, but not showing what law; that the company was not a fit person to receive the license applied for, but not showing a cause of disqualification within the law; that the company did not possess a good moral character, but not averring that the officers and directors thereof, were respectively men of bad moral character; such return is insufficient.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 000 July Term 1889, Sup. Ct. (E. D.)

On May 24, 1889, the petition of the Prospect Brewing Co. was filed in the Supreme Court representing:

. That the petitioner was a body politic duly incorporated under the corporation act of April 29, 1874, P. L. 73, and the supplements thereto, under the name of The Prospect Brewing Company, for the purpose of "the brewing of all kinds of malt liquors, and the sale thereof;" that upon its incorporation the petitioner at once entered upon the business, the manufacture and brewing of malt liquors, and the bottling and sale thereof, and had been engaged in the same from the date of incorporation until the present time continuously.

"6. That the business plant of your petitioner, the said company, consists of real estate, apparatus, utensils, and other property, of the value of $630,000. The annual product of the

brewery of your petitioner, the said company, is very considerable, consisting of about thirty-five thousand four hundred barrels, of which quantity about two million bottles are bottled for domestic consumption and export, the same being distributed by exportation to Canada, Mexico, Porto Rico, Rio Janeiro, Buenos Ayres, Montevideo, and through the United States, by means of agents in San Francisco, Cal., Savannah, Ga., Charleston, S. C., Charlotte, Raleigh, N. C., Jacksonville, Fla., Norfolk, Richmond, Va., Baltimore, Md., Camden, Newark, Sea Isle, Atlantic City, N. J., Boston, Mass., and somewhat less than one third of the whole product is sold and consumed in the city of Philadelphia. The said company employs seventy workmen and employees, with an annual wage-list of over $54,000.

" 7. Licenses for the continuance of the said business by your petitioner have been regularly obtained by it, including the past year of 1888 ; and on the fourth day of February, 1889, your petitioner filed its application to the Court of Quarter Sessions of the county of Philadelphia for a renewal of its license for the year beginning the first day of June, 1889, under the provisions of the act of May 24, 1887, entitled ' An Act providing for the licensing of wholesale dealers in intoxicating liquors.'

" 8. Upon the seventh, eighth, and ninth days of May, 1889, a hearing was had upon the said petition, and no remonstrance or objection, so far as is known to your petitioners, or as appears by entries and records of the said court, was presented or made by any one to the granting of the said license. Upon the hearing of the said application of the said Prospect Brewing Co., no objection to or remonstrance against the granting of its license having been made by any one, one of the judges of the said court asked the superintendent of the said company, one of its employees, whether the petitioner sold a drink called Ambrosia, to which he answered affirmatively. The said superintendent being then further asked by said judge the component parts of said drink, he at first hesitated to answer, saying its manufacture was a trade secret, but stated that it was a non-intoxicant, containing only one and one half per cent of alcoholic strength to the mass, and that it had been sold in the state of Delaware as such non-intoxicant under judicial decis-

ions, and also in the same way in the state of New Jersey. To a further question from the judge whether he had not sold it as a non-intoxicant to unlicensed persons in this city, telling them that they could sell it as such, he replied that he had never said so to any one; he told them that it had been sold in New Jersey and Delaware, but they would have to consult lawyers before they could sell it here. He said he had been very careful, and had declined to put Ambrosia labels on beer, when one man had asked him to do so. The court demanded the name of the individual, and he said it was one Fitzpatrick. Dr. Henry Leffmann was then called by the court, who testified to having examined Ambrosia chemically, and corroborated Wolters as to its alcoholic strength. This witness said it was a very light form of beer. Its average alcoholic strength was between one and a quarter per cent and one and three quarters per cent. The court adjourned and the parties were told to come the next day, and on the next day the judges called Fitzpatrick, who denied that he had asked for beer with Ambrosia labels, and stated he had been told by the man in charge of the bottling house that it was a soft drink. Mr. Wolters, on being confronted with Fitzpatrick, said he had never seen the man before to his knowledge, and that his request to have the beer served with Ambrosia labels had come through the bottling house. Mr. Wolters was then asked by the court whether he knew a man named Arthur Cunningham. He said he did. The court then asked whether he, Wolters, had not told Cunningham that he did not require a license to sell Ambrosia. He said he had not, nor had told anybody so. The court then called Cunningham, who testified that he had been deprived of his license last year, and a few days after the 1st of June, 1888, the brewing company's driver left a box of Ambrosia at his place; that he did not know what it was, and went to see Mr. Wolters about it, and that Mr. Wolters told him it was a soft drink and anybody could sell it. The hearing was continued until the next day, when Mr. Wolters produced two witnesses, who testified that they were told by him, early in June, 1888, that they could not, he thought, sell Ambrosia without a license, and had better let it alone; and he also produced Secretary Charles Wolters, Jr., who was in charge of the bottling establishment, and John Ludwig, bot-

Statement of Facts.

tler of said establishment, who both testified they had never said to any one that Ambrosia could be sold without a license. The counsel for petitioner then stated to the court that after the district attorney of the county had told him that he believed this mixture, Ambrosia, was obnoxious to the law as coming within the words, prohibited admixture, he had advised the brewing company's officers not to permit any person to purchase Ambrosia, who was not known by them to be a licensed dealer or seller, except to known private families for domestic consumption, and that thereafter none was sold, and this was within twelve days of June 1, 1888. No further or other proceedings were therein had than as abovementioned.

" The hearing then closed, and on Wednesday, May 15, 1889, the court certified to the city commissioners their refusal to grant a license to the Prospect Brewing Company, either as brewer or bottler, and no reasons were given by the court for this action. An application for a reconsideration of the petition was made and refused."

That from the decree of said court refusing said license there was no appeal, no bill of exceptions, nor a writ of error; and the action of said court being a refusal to grant to the said company that which the law entitles it to, it having complied with all the requirements thereof, the petitioner prayed that the court would grant a writ of alternative mandamus directed to the judges of the said Court of Quarter Sessions, etc.

The writ prayed for having been awarded and served, the following return was made thereto:

The return of D. Newlin Fell, Robert N. Willson, James Gay Gordon and F. Amédée Brégy, judges of the Court of Quarter Sessions for the county of Philadelphia, respectfully showeth:

The respondents constituted a Court of Quarter Sessions for the county of Philadelphia, which met on various days in the months of March, April and May, 1889, to hear and decide applications for licenses to manufacture, to sell, and to bottle, intoxicating liquors in the city of Philadelphia, during the year which would commence on the first day of June, 1889.

Before deciding said applications said court deemed it to be its duty to determine whether the applicants were citizens of the United States, of temperate habits, of good moral character and fit persons to receive a license.

Amongst the applications presented to said court was that of the Prospect Brewing Company, which applied for a wholesale liquor license to conduct the business of brewers of malt liquors, and also for what is known as a bottler's license.

At the hearing thereof, evidence, in the opinion of the court unfavorable thereto, was first elicited by the cross-examination of the company's vice-president by the counsel of the Law and Order Society, an organization of citizens for the purpose of making objections to the granting of petitions and of securing the enforcement of the laws governing the sale of intoxicating liquors.

Thereafter the case was further heard during parts of three days, viz., the seventh, eighth, and ninth days of May, 1889. A considerable amount of testimony favoring and opposing the application was offered to and received by the court. The statement of testimony made in the petitions of the relators is incomplete, inaccurate and misleading; but respondents respectfully submit that it is not their duty to return to this honorable court the evidence which was heard by said court.

The court carefully considered all said testimony, and necessarily passed upon the credibility of the witnesses.

The court did find, from the evidence, that during the year of its license then about to expire, the said company, through its chief executive officers, who had been charged with the conduct of its business, had caused to be brewed an intoxicating malt liquor for the purpose of selling the same to unlicensed dealers in the city of Philadelphia, to be by the latter again sold in this city in violation of the laws of the commonwealth; that said intoxicating malt liquor thus brewed by said company had been sold by it to numerous unlicensed dealers in the expectation that the same would be sold by them in this city in violation of law; that through its said officers said company, by false representations as to the character of said liquor, had induced divers unlicensed dealers to purchase the same from it; and that said liquor thus purchased had been sold in the city of Philadelphia by said unlicensed dealers.

The court did find that the said company had conducted its business during the year then expiring in violation of law. It did further find that said company was not a fit person to

receive the licenses applied for; and that, so far as it was possible for a corporation to possess any moral character, it did not possess a good moral character.

The said court, in the exercise of the discretion conferred upon it by law, in accordance with the evidence, as understood by it, did refuse the licenses which were applied for by the Prospect Brewing Company.

Respondents admit the truth of the averments of fact in the seventh paragraph of the relator's petition.

Respondents do not possess sufficient knowledge or information to answer as to the truth of many of the averments of fact in the said petition. They respectfully submit, however, that it is not necessary for them further to make answer thereto.

*Mr. F. Sheppard* and *Mr. G. W. Biddle*, for the petitioner:

1. A comparison and contrast of the provisions of the act of May 13, 1887, P. L. 108, "to restrain and regulate" the sale of liquors, with the act of May 24, 1887, P. L. 194, providing for the licensing of wholesale dealers in liquors, becomes necessary. None of the provisions of §§ 7, 11, 12, 13, 14, 17 and 18 of the act of May 13, 1887, are found in the act of May 24th. From the scope of the whole act of May 13th, it is obvious that it was the introduction of a system to pervade the whole state, by which the repression of intemperance was attempted to be effected through the restriction of the sale of intoxicating drinks and probably by the diminution of the places in which such sales might be made. It was a stringent mode of dealing with and regulation of the sale by retail of vinous, spirituous, and brewed liquors. It authorized in terms the refusal of a license, where, in the opinion of the court, after hearing applications therefor, and petitioners for and against the application, the license was either unnecessary, or the applicant was an unfit person to whom the license should be granted, or where the party applying for the license had previously violated any law relating to the sale of liquors.

2. The act of May 24, 1887, providing for the licensing of wholesale dealers in intoxicating liquors, in its first section simply fixes the amount to be paid for such license; the second section provides that licenses shall be granted in such

manner as is provided by existing laws, and enacts that a time shall be fixed, at which the applications for license shall be heard, when all persons applying, or making objections to applications, may be heard by evidence, petition, remonstrance, or counsel. There is no direct power given to refuse the license ; and no other part of this, or of the next and last section, in any way refers to this subject. What the objections may be which are referred to in the second section, are not stated ; but they may be inferred to be objections arising out of the two provisions at the end of the second and third sections respectively of the act, or possibly some objection as to the character of the place in which the business sought to be licensed is carried on. Whatsoever these objections may be, however, they must be objections made by some one in the shape of a petition or remonstrance, and supported by evidence, and if thought necessary, by the arguments of counsel, unless a petition or remonstrance, written or verbal, containing a specific objection to the application is made. There is no warrant found in the act itself for dealing with the subject by way of refusal of the license upon a suggestion emanating from the tribunal which is to hear the remonstrance or objection.

3. If we compare the language of the second section of the act of May 24th with the language of the fourth and seventh sections of the act of May 13th, the contrast between the two acts is very striking. And it may be fairly said that while the first of these acts was dealing exclusively with the moral and social aspects of the question, the second act dealt with the financial side of the subject. This view becomes very much more apparent when we bear in mind that in the case of the Prospect Brewing Company it is asserted in the petition for the writ of mandamus that somewhat less than one third of the whole product manufactured by it is sold and consumed in the city of Philadelphia, leaving more than two thirds to be exported to the places named in the sixth paragraph of the petitioner's suggestion, throughout the United States and foreign countries ; one act is thus dealing with the moral and social side of the question, the other with the financial. And in further confirmation of this, it must also be borne in mind that the act of May 24th, not only prohibits a distiller, brewer, and manufacturer from selling in less qantities than one gallon,

but the bottlers spoken of in the third section are not allowed to sell any liquors to be drank upon the premises where sold, or at any place provided by the seller for that purpose. It is obvious that, no matter what the quantity manufactured by wholesale dealers be, if the provisions of the act in regard to the sale of liquors in small quantities be carried out, it becomes a matter of no import, so far as this community is concerned, what the quantity manufactured may be.

4. Not only was there no objection or remonstrance made to the granting of this license, but no reason was given by the court for its refusal to grant it. We are driven altogether to inference on the subject. No one objected or remonstrated, and no one stated that the Prospect Brewing Co., by itself or its agents, sold in less quantities than one gallon. No one testified nor was any evidence produced that the product of the brewery was sold, to be drank on the premises or at any place provided by the seller for that purpose. These are the only two prohibitions specifically referred to in the act, and there is no warrant for importing any other prohibitions into it. Moreover, it was not pretended that the officers or managers of the company were not persons of temperate habits and good moral character, for no testimony was given upon this subject; and if the action of the court is to be upheld by what took place on the days of the hearing of the petitioner's application, we aver that nothing illegal in the supposed conduct of the superintendent, spoken of in the testimony, was shown to have taken place.

5. Nor can it be said that the provision of § 2, act of May 24, 1887, that licenses shall be granted "in such manner as is provided by existing laws," imports into the mode of proceeding by the court the provisions of the act of May 13, 1887, upon the subject. This becomes very clear if we bear in mind that he act of April 10, 1849, P. L. 570, was held as late as the year 1880 to be in force with the exception of so much of it as relates to the duties and powers of the Sinking Fund Commissioners: Gross v. Commonwealth, 39 Leg. Int. 61; and in Kuebler v. Commonwealth, 4 Pa. C. C. R. 1, it was held by the Common Pleas of Northampton county, upon the 27th September, 1886, that the act of March 31, 1856, § 3, authorizing licensed brewers to bottle and sell and deliver malt and brewed

liquors in quantities not less than one dozen bottles, has not been repealed either directly or by implication. The phrase, existing laws, in the second section of the act of May 24, 1887, obviously applies to the body of legislation in force at the time the acts of the 13th and 24th May, 1887, were brought into existence. It would be a strained and forced implication to limit the words found in the act of 24th May to the previous act of 13th May, introduced at the same time as part of one system dealing with the whole general subject, and passed cotemporaneously, the difference of the few days between the acts being probably due to the mere accident of the signature to one of the bills by the governor being affixed a few days earlier than to the other. The existing laws were the laws of 1849, and the other laws which bore upon the general subject of the licensing of wholesale dealers in malt liquors.

6. The authorities sufficiently vindicate our right to the use of the writ of mandamus in this proceeding. In Virginia v. Rives, 100 U. S. 313, Mr. Justice STRONG speaks as follows : " In what case such a writ is warranted by the principles and usages of law, it is not always easy to determine. Its use has been very much extended in modern times, and now it may be said to be an established remedy to oblige inferior courts and magistrates to do that justice which they are in duty and by virtue of their office bound to do. It does not lie to control judicial discretion, except when that discretion has been abused; but it is a remedy when the case is outside of the exercise of this discretion, and outside of the jurisdiction of the court or officer to which or to whom the writ is addressed. One of its peculiar and more common uses is to restrain inferior courts, and to keep them within their lawful bounds. This subject was discussed at length in Ex parte Bradley, 7 Wall. 364, and what was there said renders unnecessary any discussion of it now." See also Strauder v. West Virginia, 100 U. S. 304, and Ex parte Virginia, 100 U. S. 313. And upon the subject of the discretion to be exercised by the judges, we make the following references : Tomlin's L. D. and Cunningham's L. D., title Discretion; Rex v. Young, 1 Burr. 556; Eastwick v. London, Styles, 43; Rex v. Canterbury, 15 East 139; Rex v. Monmouth, L. R. 5 Q. B. 256; Queen v. Adamson, 1 Q. B. Div. 201; People v. The Superior Court, 5 Wend. 115; Rex v. Wilkes, 4 Burr. 2539.

*Mr. John G. Johnson*, for the respondents, filed no printed brief.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a writ of alternative mandamus directed to the judges of the Court of Quarter Sessions of Philadelphia holding the license court, commanding them to show cause why they should not grant the petitioner a brewers' license. The petition upon which the alternative writ was allowed sets forth, inter alia, that the Prospect Brewing Company is a corporation duly chartered under the laws of this state for the purpose of the brewing of all kinds of malt liquors and the sale thereof; that the capital stock of said corporation is $200,000, which has been fully paid up; that its business plant, consisting of real estate, apparatus, utensils, and other property, is of the value of $630,000; that "the annual product of the brewery of the petitioner, the said company, is very considerable, consisting of about thirty-five thousand four hundred barrels, of which quantity about two million bottles are bottled for domestic consumption and export, the same being distributed by exportation to Canada, Mexico, Porto Rico, Rio Janeiro, Buenos Ayres, Montevideo, and through the United States, by means of agents in San Francisco, California; Savannah, Ga.; Charleston, S. C.; Charlotte, Raleigh, N. C.; Jacksonville, Fla.; Norfolk, Richmond, Va.; Baltimore, Md.; Camden, Newark, Sea Isle, Atlantic City, N. J.; Boston, Mass.; and somewhat less than one third of the whole product is sold and consumed in the city of Philadelphia. The said company employs seventy workmen and employees, with an annual wage-list of $54,000; that for several years last past it has been licensed as a brewer, including the year 1888; that the petitioner filed its application to the Court of Quarter Sessions of the county of Philadelphia for a renewal of its license for the year beginning the first day of June, 1889, under the provisions of the act of May 24, 1887, entitled 'An act providing for the licensing of wholesale dealers in intoxicating liquors;' . . . . . that upon the seventh, eighth, and ninth days of May, 1889, a hearing was had upon the said petition, and no remonstrance or objection, so far as is known to your petitioners, or as appears by entries and records of the said

court, was presented or made by any one to the granting of the said license." The petition then proceeds to narrate at some length an inquiry which occurred in court upon the hearing as to one of petitioner's employees having sold an article of drink called ambrosia, which appears to have been a light form of beer. We need not give this at length as it is of very little importance, and is referred to hereafter in connection with the return to the writ.

The underlying principle of this case, that is, the right of a brewer or wholesale dealer to a license, has been fully considered and decided, In re Application of Mary E. Pollard for a wholesale license. That was a certiorari to the Quarter Sessions of Allegheny county, and the opinion is now filed with this case. I do not propose to re-argue the questions there decided. I shall refer to them merely to state the points and rulings involved. We there held that in granting licenses to wholesale dealers, bottlers, and brewers under the act of May 24, 1887, P. L. 194, the Court of Quarter Sessions has not the large discretion conferred upon it by the retail act of May 13, 1887, P. L. 108; that the discretion conferred by the wholesale act is a qualified, limited discretion, and is confined to the inquiry whether the applicant for a wholesale license is a citizen of the United States, of temperate habits, and of good moral character. As no remonstrance or objection appeared upon the record of that case, alleging that the petitioner was disqualified for either of the reasons above stated, we reversed the order of the court below refusing a license, as we also did a number of other like cases submitted at the same time. It scarcely needs an argument to show the propriety of this ruling. If the record does not disclose the reason for the refusal, it would be impossible to review the action of the court below, either upon a writ of certiorari or other process, no matter how illegal or even arbitrary the action of the court might be, or how vast the interests which are thus stricken down. As to such matters a Quarter Sessions judge would sit as absolute a despot as the emperor of China.

In the case in hand, the value of the brewery, with its stock, fixtures, etc., was, as before stated, $630,000. The refusal of a license leaves the plant and stock comparatively worthless. The former is of little use for any other purpose, while the

latter cannot be sold without a violation of law. Under such circumstances it is but reasonable that the action of the court should be in such shape as to be reviewable here, and to show that the refusal of the license was the exercise of a sound judicial discretion expressly authorized by law. It follows from what has been said that had this case been brought here upon a writ of certiorari it would necessarily have been reversed. In this respect it differs widely from an application for a retail license, and the reason is, that in the latter instance the discretionary powers of the court are much broader; the license may be refused not only because the court regards the applicant as an unfit person to sell liquor, or, if fit, that his house is not needed in the particular neighborhood for the accommodation of strangers and travelers. The present case, however, is here upon an application for a mandamus, which involves considerations not referred to in Pollard's Case.

It is perhaps unfortunate that in cases of so much magnitude, involving very large pecuniary interests, no orderly mode of practice has been prescribed by the act of assembly or adopted by the courts. The licensing of wholesale dealers has heretofore been regarded so much as a matter of course, that but very few cases have reached this court under prior acts of assembly. In the meagre reports of the one or two cases which have reached us, it is difficult to gather the facts, and the Per Curiam opinions fail to show that the distinction between wholesale and retail dealers has ever been called to our attention. We do not find anywhere any allusion to the proper mode of procedure in the matter of applications for a wholesale license. This is the first case that has come up under the act of May 24, 1887, and a careful examination of said act leads us to the conclusion, as we have decided in Pollard's Case, that in the absence of any remonstrance or objection upon the record, it is the duty of the court to grant a wholesale license, and the objection must be limited to the three disqualifications already alluded to.

As a matter of practice such remonstrance or objection should be in writing and placed upon the record. In such case, the action of the court below can be reviewed here in an orderly manner. When a remonstrance is filed, it forms, with the petition, the pleadings in the case. There is then an issue

of fact before the court, to be decided as in other cases upon the evidence. If the evidence sustains the remonstrance, it is the plain duty of the court to refuse license. That would be the exercise of a lawful judicial discretion with which this court would hesitate to interfere. When the application of the petitioner came up for consideration in the court below, there was neither remonstrance nor objection upon the record against the granting of the license. There was no issue before the court. There was no disputed question of fact for it to decide, and the act of May 24, 1887, does not confer upon the Court of Quarter Sessions the powers of a roving commission to inquire as to matters not properly before the court, and in no way connected with the petitioner's right to a brewer's license. As there was no issue before the court, it follows necessarily that there could have been no legal trial, and as there were no disputed questions of fact, there could have been no valid findings of fact. We might well, therefore, without more, discard the entire return of the learned judges of the Quarter Sessions to the writ of alternative mandamus. That we may not seem wanting in respect to them, I will proceed to its consideration. And, first, I will refer briefly to the principles of law which govern the return to such writs.

There is no form of pleading known to the law in which greater certainty is required than in a return to a writ of mandamus. It requires not only the greatest possible certainty; not merely certainty to a common intent, or certainty to a certain intent in general, but certainty to the greatest possible intent; or, as it is sometimes called, certainty to a certain intent in every particular: King v. Mayor, 1 Lord Raym. 559; Bacon's Abr. Mandamus, 1 K.; Rex v. Liverpool, 2 Burr. 731; Tapping on Mandamus, 393; Harwood v. Marshall, 10 Md. 452; Reichenbach v. Ruddach, 121 Pa. 18; Commonwealth v. Commissioners, 37 Pa. 237; Rex v. Malden, 2 Salk. 431. The reason for this strictness is, that at the common law the return could not be traversed. However that may be now, in some cases, the rule is practically the same in the present instance. We all agree that we are bound by the return to the writ, and that if it discloses a sufficient ground to refuse the license we can go no further. It follows that the common law rule as to the certainty of the return must be applied.

Keeping this in view, and also the fact that the objections to the petitioner's application must be confined to the questions of (1) citizenship, (2) temperate habits, and (3) good moral character, I will briefly consider this return.

As preliminary the judges say:

" Before deciding said application said court deemed it to be its duty to determine whether the applicants were citizens of the United States, of temperate habits, of good moral character, and *fit persons to receive a license.*"

The first three matters were proper subjects of inquiry; if there was objection made upon either of these grounds, it was the plain duty of the court to hear the evidence and decide. As to the part of the return I have italicized, it was a matter with which the court below had nothing to do in the case of an applicant for a wholesale license.

They have nothing to do with it because the act of May 24th confers no such power upon them. It is incorporating into the wholesale act a provision of the retail act. The key to the whole difficulty may perhaps be found in this assumption of a discretion in wholesale licenses which is not found in the law, and is applicable only to the case of retailers. The fitness of a man to have a wholesale license depends upon his possessing the three qualifications before mentioned, not upon the opinion of the court upon other matters outside of them.

It appears that at the hearing in the court below the main question was as to the manufacture and sale of a mild form of beer called ambrosia, and upon the petition for the writ of alternative mandamus, the petitioner sets out at some length the testimony that was given in regard to it, with the names of the witnesses; from which it appeared that the alcoholic strength of the said beer was from one and a quarter to one and three quarters per cent only; that Dr. Henry Leffmann was then called as a witness by the court, who testified to having examined ambrosia chemically and corroborated the evidence of the petitioner as to its alcoholic strength. Much more was alleged in the petition to which it is unnecessary to refer. To this matter the court below makes return:

" The statement of testimony made in the petition of the relators is incomplete, inaccurate and misleading."

This return under all the authorities is clearly insufficient.

See Reichenbach v. Ruddach, supra. In what respect was it inaccurate or misleading? Conceding that the respondents were not required to return the evidence, yet if they attempt to negative an averment in the petition by their return, it must be done with the certainty required in this form of pleading.

The return then further states:

"The court did find from the evidence, that during the year of its license then about to expire, the said company, through its chief executive officers who had been charged with the conduct of its business, had caused to be brewed an intoxicating malt liquor for the purpose of selling the same to unlicensed dealers in the city of Philadelphia, to be by the latter again sold in this city in violation of the laws of the commonwealth; that said intoxicating malt liquor thus brewed by said company had been sold by it to numerous unlicensed dealers in the expectation that the same would be sold by them in this city in violation of law; that through its said officers said company, by false representations as to the character of said liquor, had induced divers unlicensed dealers to purchase the same from it; and that said liquor thus purchased had been sold in the city of Philadelphia by said unlicensed dealers."

It is to be observed that this return is entirely outside of the case. It has no bearing upon either of the three qualifications required for a wholesale dealer, and at best refers to a rambling inquiry not properly before the court. The license which the company held authorized them to manufacture and sell beer to any person who was willing to buy, licensed or unlicensed, and it must not be forgotten that the particular beer referred to was ambrosia, which as appears by the averments in the petition, and not specifically contradicted in the return, contains only a little over one per cent of alcohol. The return is, moreover, vague and uncertain; we are not told what false representations were made by the company in regard to the character of the beer, and mere adjectives are entirely out of place in a return to a writ of alternative mandamus. Nor does this portion of the return allege a violation of any law of this commonwealth. I have dwelt upon it at greater length than was necessary, for the reason that it had evidently much to do with the action of the court below.

The return then proceeds:

" The court did find (*a*) that the said company had conducted its business during the year then expiring in violation of law.  It did further find (*b*) that said company was not a fit person to receive the license applied for; and (*c*) that so far as it was possible for a corporation to possess any moral character, it did not possess a good moral character."

There are three subjects referred to in this portion of the return, and for convenience I have divided them.  As to the first, (*a*) what law has the company violated in the conduct of its business?  The return does not inform us.  Instead of facts we are given a mere conclusion of law.  The averment is so vague that it has no force whatever.  In regard to the second branch, (*b*) I have already said that the fitness of the company to receive a license is not in the discretion of the court below, unless from one of the three causes of disqualification before mentioned.  A return generally that the applicant is not a fit person to receive a brewers' license, without specifying for what cause, is bad for uncertainty, and is, moreover, evasive.  The return does say, however, (*c*) that " so far as it was possible for a corporation to possess any moral character, it did not possess a good moral character."

It is difficult to treat this proposition seriously.  Yet it is the only matter in this return which even gives color of legality to the refusal of this license.  That a corporation, an invisible, intangible thing, an artificial being created by the law, can have a character of any kind, is a novel proposition.  That the learned judges below so regarded it, is evident by the qualification in their return.  But the corporation has officers and a board of directors.  If the court below had found upon evidence and so returned, that said officers and directors were not men of good moral character, I apprehend the return would have been sufficient.  At the same time, I doubt whether any one of the learned judges of the court below would have been willing to put his name to a return that the officers and directors of this corporation were respectively men of bad moral character.  The return that the corporation has not a good moral character is insensible.

There is nothing else in the return which requires comment; our conclusion is that it sets forth no valid reason why the petitioner should not be licensed.

The former writ was alternative. The writ of peremptory mandamus is now awarded. It will probably be found unnecessary to issue it.