CASE 68.—CONTROVERSY  OVER  THE  APPLICATION  OF  CLARENCE  EWING  FOR  A  LICENSE  TO  RETAIL  LIQUOR.—December 2, 1909.

# Commonwealth v Ewing

Appeal from Warren County.

JOHN M. GALLOWAY, Circuit Judge.

From an order of the County Court granting liquor license to Clarence Ewing, which was affirmed in the Circuit Court, the Commonwealth appeals.—Reversed.

Intoxicating Liquors—Licenses—Merchants—Evidence.—Evidence, on application for a retail liquor license, held to show, notwithstanding applicant's testimony to the contrary that he was not in good faith a merchant, and that he has assumed the business for the purpose of retailing liquor; so that under Ky. St. 1909, Sec. 4205, authorizing such a license only on satisfactory evidence to the contrary, the county court did not exercise reasonable discretion in granting him a license.

THOS. W: THOMAS, W. B. GAINES, JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This appeal is prosecuted by the commonwealth from a judgment of the Warren circuit court affirming a judgment of the county court granting Ewing a merchant's license to sell liquors under section 4205 of the Kentucky Statutes reading, in part, as follows: "License to merchants, druggists or distillers shall be granted only upon satisfactory evidence that the ap-

plicant is in good faith a merchant, druggist or a distiller and that the applicant has not assumed the name or the business for the purpose of retailing liquors.'' ·We are asked to reverse the judgment upon the ground that Ewing was not, at the time he applied for license, a merchant in good faith, and that he assumed the business of being a merchant for the purpose of obtaining a license to retail liquors.

The only evidence in the record is that of Ewing, and two other witnesses who testified that they had never heard anything against his moral character. From Ewing's testimony we gather the following facts: Delafield precinct, in Warren county, adjoins the city of Bowling Green, and is the only precinct in the county in which license to sell liquors may be granted. The remainder of the county, including the city of Bowling Green, has voted against the sale of liquors. In this precinct a short distance from the city there is a place called the ''boat landing'' on Barren river, and· in the immediate neighborhood of this boat landing there are several groceries and a few people. In the entire precinct there are 230 voters. Ewing some time in February, 1909, leased a lot 40x50 feet near the boat landing for a term of one year with the privilege of renewing the lease. On this lot he put up, at a cost of some $300, a plain room 20x40 feet, and on March 1, 1909, opened a grocery store in it with a stock of goods worth about $250. Previous to this time he had never engaged in the grocery or any mercantile business. His principal occupation seems to have been clerking in places where whisky was sold.

On March 1st there were four other grocery stores in the immediate neighborhood·of Ewing's place, and all of them had license to sell liquor under the statute

supra.    Twelve days after he opened his grocery, he put up notices that he would apply for license, and on the 22d of March made the application.    In the course of his examination, he said that he was a merchant in good faith and did not engage in the business for the purpose of getting license to sell liquor; but his statement is not corroborated by any other fact or circumstance in the record.    On the contrary, we should say that it appears at first blush that his sole purpose in opening the grocery was to engage in the sale of liquor, and that it affirmatively appears that Ewing was not a merchant in good faith, and that he had assumed the name and the business for the purpose of retailing liquors.    There is no evidence that the place had any business attractions whatever for a person who wished to engage only in the sale of merchandise, and it is inconceivable that a person of ordinary intelligence, as we assume Ewing to be, should attempt to establish himself in the grocery business at this point unless his intention was to use his pretense of a grocery for the purpose of getting license to engage in the more profitable business of selling whisky. That he was not a merchant in good faith, and that he did assume the business as a mere subterfuge behind which to hide his real purpose, is apparent in almost every line of his evidence.

We are not concluded by his statement that he was a merchant in good faith, nor are we estopped by it from looking into the truth of the matter as it appears in the record.    Courts, in the interest of justice and truth, may, and often do, look beneath the surface of things to discover the real nature of the transaction under investigation, and are frequently justified in putting aside as unworthy of serious consideration statements which, although apparently candid, are

really used as mere forms of expression to bring the actor within the protecting circle of some rule of law or statutory phrase. In the enactment of this statute, the Legislature was careful to provide not only that the applicant for license should establish by satisfactory evidence that he was a merchant in good faith, but also that he had not assumed the name or the business of a merchant for the purpose of obtaining license. A person may be a merchant in good faith in the sense that he is engaged in the business at a place and under circumstances indicating his intention to follow it as a business; but proof of this fact alone would not entitle him to license to sell liquors. He must, in addition, show that he did not engage in the business for the purpose of obtaining license.

It was the legislative purpose that the evidence in support of both these propositions should be clear and convincing, and, when a person applies for license to sell liquor, the question of his good faith and intent should be carefully inquired into in order that the statute may not be used as an instrument to enable persons not bona fide merchants to sell liquor. It is manifest that, in cases like this, no rule of general fitness can be laid down by which the lower court may be guided in granting or refusing license. Each application must stand or fall on the evidence introduced concerning it; but it may safely be said that in every case the previous occupation, as well as reputation of the applicant, the length of time he has been engaged in the business at the place where he applies for license, the value of his stock of goods, the probability of it being a good location from a business standpoint, the volume of business done by him, the number of people in the neighborhood, and its prox-

imity to other similar places of business, are matters pertinent to be inquired into and considered by the court in arriving at a conclusion, and the burden is upon the applicant to establish that he comes within the class to whom license may be granted.

In disposing of this case we have not overlooked or underestimated the weight that should properly be given to the judgment of the court granting the license.   In more than one like case we have held that the discretion vested in tribunals authorized to grant license will not be interferred with unless it has been abused, or, in other words, not reasonably exercised. And this well-settled practice we have no disposition to modify or depart from; but, in the case before us, we feel obliged to say that in our opinion the county court did not exercise a reasonable discretion in granting Ewing license.

Wherefore the judgment is reversed, with directions to proceed in conformity with this opinion.