## Audubon Country Club v. Commonwealth.

(Decided March 24, 1916.)

### Appeal from Jefferson Circuit Court.

1. Innkeepers—Taverns—Necessity for Tavern—Club House.—Before the necessity for the existence of a tavern at a given place, contemplated in the statute, can be said to exist there must be some demand from the general public as distinguished from a particular class of the people for the existence of such tavern; and where a country club has for several years had a tavern license at a given place and during all of that time no single member of the public other than members of the club has applied for accommodations at the club house this is conclusive evidence of a lack of demand upon the part of the general public.

2. Innkeepers—Taverns—Necessity for Tavern—Club House.—While the members of a country club are a part of the public, when they frequent their club house and patronize it it is not in their capacity as members of the general public, but because of their status as members of the club; and this evidences no demand from the general public for the existence of such tavern.

3. Innkeepers—Taverns—What Constitutes Tavern.—A tavern is a public place where accommodations are furnished to the traveling public for compensation; the keeper thereof is supposed to hold himself out in some form of advertisement to the public as the keeper of a public place; it is a place operated by the keeper for profit and where, within reasonable limitations, the public may demand accommodations.

4. Innkeepers—Clubs—What is Not Tavern.—A purely social organization not operated for profit and the privileges of which are extended only to its members and their guests and which does not cater to the public or in any way invite its patronage is not a tavern within the meaning of our statute, and persons operating such a place do not in good faith intend to operate a tavern.

5. Intoxicating Liquors—Tavern License—Corporation May be Granted.—A corporation may be granted a tavern license in this state and its officials may take the required statutory oath.

HUGH B. FLEECE for appellant.

J. H. McCHORD and A. SCOTT BULLITT for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant is a corporation from which no private profit is to be derived, organized under the laws of this state. Its objects and purposes are, as recited in the articles of incorporation, the "obtaining by purchase, lease, gift or otherwise of suitable grounds or other property in Jefferson county, Kentucky, and the conducting of a country club for athletic exercises, healthful outdoor amusements, and the cultivation of social relations and pleasures."

It has leased about one hundred and thirty acres of land a mile and one-half from the city limits of Louisville, has erected buildings thereon, and has a membership of about three hundred, who habitually go there for pleasure during the good weather. It has a stable and keeps provender, and is provided with a place to park automobiles. There are two bed rooms in the house, only one of which is occupied, and that by an employe of the club.

Under our statute (sec. 4214) license to retail liquor outside of an incorporated city or town shall be granted only to licensed tavern keepers or to druggists.

Appellant, with the purpose of later procuring a retail liquor license, made application to the county judge of Jefferson county for a license as a tavern keeper, and that official, after hearing the evidence, granted the license. The county attorney appealed to the Jefferson

circuit court, and that court adjudged that appellant was not entitled to such license as a tavern keeper, and directed that the license issued by the county judge be cancelled, and from that judgment the club has appealed to this court.

Section 4206 of the Kentucky Statutes reads as follows:

"License to keep a tavern outside of an incorporated city or town shall be granted only to persons who are prepared with houses, bedding, stabling and provender sufficient to accommodate the public, and shall not be granted to anyone unless the keeping of a tavern at the place proposed is necessary for the accommodation of the public, nor until the applicant shall take an oath, in open court, that he in good faith intends to keep a tavern for the accommodation of the public."

The proper interpretation of that section, in the light of the evidence heard before the county judge on the application, must determine whether or not appellant was entitled to such license.

On the application for the license only one witness was examined, and he was the treasurer of the club. He stated that the club had stables and provender, and two sleeping rooms, and a place to park automobiles; that the club was private property, but was open to the general public to the extent that if anybody applied for accommodations for the night or for entertainment they would be entertained; that the club was formed for social purposes; that members of the club and their guests were entitled to the privileges of the club, but that any member of the public who applied for accommodations would be granted them; that the by-laws provided that the privileges of the club are for the members; that while it might be contrary to the rules of the organization to entertain one other than a member of the club, that if such application was made the privilege would be granted for the reason that they wanted the license and under the law would be under bond to grant the privilege; that no rates had ever been fixed by the club for persons who might desire to stay all night or apply for other accommodations for the reason that nobody had ever applied for such privileges, although the club had been in operation several years; that the club did not cater to the general public, and that the witness, who was a member of the club, would not like for it to be known that the

club would supply the general public with entertainment, and that such entertainment would be furnished to the general public, if demanded, only because it desired to comply with the law; that the club was not furnishing entertainment for profit, the object being to furnish food and drink and other things to its members at cost; that to the knowledge of the witness no member of the public other than a club member has ever applied for entertainment at the club since its organization.

Only three questions are to be considered:

(1) Was it necessary for the accommodation of *the public* that there should be a tavern at the Audubon Country Club?

(2) Even if such a necessity existed, was it the purpose of the club in good faith to keep a tavern for the accommodation of *the public?*

(3) May a corporation in any event be granted a tavern license?

"Public" is defined in 32 Cyc. 748 as follows: "Open to all the people—shared in or to be shared or participated in or enjoyed by people at large; not limited or restricted to any particular class of the community." The definition of the word "public" given in the century dictionary is "of or belonging to the people at large; relating to or affecting the whole people of a state, nation or community; not limited or restricted to any particular class of the community."

It is therefore apparent that the necessity of the existence of a tavern at a given place, contemplated in the statute, is that there must be some demand from the general public, as distinguished from any particular class or branch of the public, for such tavern. The evidence on the application in this case shows that although during the six or seven years that the club had operated at this place, during all of which time it had a tavern license, that no single member of the public, other than its members and their guests, had applied for accommodations of any kind, either lodging, meals, or drink at the club. There could be no more conclusive evidence of the lack of a demand by the general public for a tavern at that place.

But it is argued for appellant that its three hundred members constituted the public or a part thereof within the meaning of the statute, and that as they frequented the place that this showed a demand for a tavern at that

place and the necessity for its existence. It is only necessary to say in response to this argument that the members of the club frequented the place and patronized it, not in their capacity as members of the general public, but because of their status as members of the organization. The necessity of a tavern must be shown by demand from the general public who are looking for a public place where they may receive entertainment because they are members of the general public, and not because they happen to be members of a social organization.

The club house is situated only one and one-half miles from the city limits of Louisville, the largest city in this state, where there are exceptionally fine hotels for the accommodation of the traveling public, and under the whole evidence in this case it would be little short of an absurdity to say that there existed at the Audubon Country Club a necessity for a tavern to accommodate the general public.

In Commonwealth v. Shortridge, 3 J. J. Marshall 638 it is said:

"An innkeeper and a tavern-keeper are synonymous terms. Under the title, Inns and Inns-keepers. Bacon's Abridgement, letter B, page 660, an innkeeper is said to be "a person who makes it his business to entertain travelers and passengers, and provide lodging and necessaries for them and their horses. and attendants."

In Southwood v. Myers, 3 Bush 684, the following definition is given:

"An inn-keeper is defined to be a person who makes it his business to entertain travelers and passengers, and provide lodging and necessaries for them, their attendants and horses, for a reasonable compensation."

Cyc., vol. 22, page 1070, defines an innkeeper to be:

"A person who publicly professes that he keeps an inn, and will receive therein all travelers who are willing to pay an adequate price, and who come in a situation in which they are fit to be received." Wyman on Public Service Companies, sections 201 and 205, says that one cannot become a tavern or innkeeper unless he professes to serve the public or unless the community is given to understand that he wishes to do business with all comers.

From these definitions it will be seen that a tavern is a public place where accommodations may be furnished

404 KENTUCKY REPORTS. [Vol. 169.

to the traveling public for compensation; that the keeper. is supposed to hold himself out to the public in some form of advertisement as the keeper of a public place of entertainment for compensation; it is a place run. by the keeper for profit, and where, within reasonable limitations, the public may demand accommodations.

The evidence shows the appellant to be the very antitheses of what these definitions show a tavern to be; it. is a purely social organization; it is not operated for profit; its privileges are intended only for its members and their guests; it does not cater to the public or in any, way invite its patronage; on the contrary, it has concealed from the public the fact that it has had a tavern license and that for that reason the public may demand accommodations at its hands.

The evidence, instead of showing, as it was the duty. of appellant to do, that in good faith it intended to keep a tavern, on the contrary showed affirmatively that it did not; and the mere fact that one of its officials was willing to take the formal oath required by the statute that it in good faith did have such intention is not conclusive of the question, the evidence as a whole showing there was no such intention.

As said in the case of Commonwealth v. Ewing, 135 Ky. 557:

"We are not concluded by his statement that he was a merchant in good faith, nor are we estopped by it from looking into the truth of the matter as it appears in the record. Courts, in the interest of justice and truth, may, and often do, look beneath the surface of things to discover the real nature of the transaction under investigation, and are frequently justified in putting aside. as unworthy of serious consideration statements, which, although apparently candid, are really used as mere forms of expression to bring the actor within the protecting circle of some rule of law or statutory phrase."

No reflection is intended or could be properly made. on the official of the club who made the oath in the county court, as it amounted only to his opinion that the club under the law in good faith intended to operate a tavern, and such doubtless was his opinion.

Although it is not necessary for the determination of this case, in view of the fact that the judge of the circuit court, in his opinion copied in the record, held that there was no authority of law in this state to grant a

tavern license to a corporation, and that the officer of a corporation could not for it and in its name take the statutory oath that it intended in good faith to keep a tavern, we have deemed it necessary to pass on that question.

It will be observed that section 4206 authorizes the granting of a tavern license to "persons" who are prepared, &c.; section 457, Kentucky Statutes, defines the word "persons" as follows:

"The word 'person' may extend and be applied to bodies politic and corporate, societies, communities, and the public generally, as well as individuals, partnerships, persons and joint stock companies. The words 'corporation,' 'company', may be construed as including any corporation, company, person, persons, partnership, joint stock company or association."

It would seem reasonably clear from the statute quoted that it was not the legislative purpose to give to the word "person" in the statute authorizing the issual of tavern licenses any more restricted meaning than in other similar statutes, there being nothing to indicate that such exception should be made in the case of persons applying for tavern license.

We therefore conclude that a corporation may be granted a tavern license and that the statutory oath may be taken upon its behalf by its authorized officers.

This view is fortified by the following authorities from other states on this question: Connecticut Breweries Co. v. Murphy, 81 Conn. 145, 70 Atl. 450; Enterprise Brewing Co. v. Grimes, 173 Mass. 252, 53 N. E. 855; People v. Heidelberg Garden Co., 233 Ill. 290, 84 N. E. 230; Life Ins. Co. of Amr. v. Fassett, 102 Ill. 313; Och. v. People, 124 Ill. 399, 16 N. E. 663; In re Indiana Building Co License, 75 Atl. 29; In re Prospect Brewing Co., 17 Atl. 1090; In re Lynch Company, 75 Atl. 41.

The judgment is affirmed.