## American Brewing Company's License.

*Wholesale liquor license—Discretion of court—Review—Act of 1891.*

A judge has lawfully exercised his discretion in refusing a wholesale liquor license under the act of June 9, 1891, P. L. 257, where he states in his opinion that he had personal knowledge of the facts pertinent to the case, and made careful inquiry as to the necessity of the license, and the fitness of the applicant, and that having a due regard to the number and character of the petitioners for said license, and considering the best interests of the community and of the county at large, together with the facts and information had and obtained as aforesaid, and exercising what was considered a sound discretion, the application was refused.

In such case the refusal of the application was in the exercise of a sound legal discretion and therefore not reviewable by the Supreme Court.

Argued April 19, 1894. Appeal, No. 362, Jan. T., 1894, by the American Brewing Company, from order of Q. S. Clearfield Co., Jan. T., 1894, No. 124, refusing a wholesale liquor license. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Petition for wholesale license. Before GORDON, P. J.

The opinion of the court below was as follows :

" The application is for a wholesale brewer's license in the town-

ship of Woodward under act of June 9, 1891, P. L. 256, and is regular on its face, the requirements of the act being strictly complied with. The bond filed with the petition is irregular in that it purports to be given 'for the use and purposes mentioned in the tenth section of an act of assembly approved the 13th day of May, A. D. 1887, entitled an act to restrain and regulate the sale of vinous, spirituous, malt or brewed liquors, or any admixture thereof,' and does not purport to be given for the uses and purposes mentioned in the wholesale dealers act under which the application is made. This is probably the result of an oversight in using the wrong blank form of bond, and but for the reference to the act is in proper form, and it is but fair to say it was not noticed at the time and had nothing to do with the refusal of the license, the same having been refused because, in the opinion of the court, there was no necessity for it.

"Under rule of court applications for license are made on first Monday in January of each year. For 1894 there were 190 applications, viz.: 17 wholesale, 134 hotel, 5 brewery, 28 restaurant and 1 distillery license. Of these 114 were granted, 72 refused and 4 withdrawn. No remonstrances were filed or opposition of any kind made in court to any of these 17 wholesale applications. Five of them were for Du Bois borough, three for Clearfield borough, four for Morris township, one for Osceola borough, one for Coalport borough, one for Houtzdale borough, and one for Woodward township, including that of the American Brewing Company in question. Of the 17 wholesale applications, 7 (including one wholesale brewer's license from Woodward township and one wholesale liquor license from Houtzdale borough, which is within the limits of said township) were granted and 10 refused. Of the 162 hotel and restaurant licenses 100 were granted and 62 refused. Of the 62 refused, opposition by remonstrance or otherwise was made to but less than one third of them. As to the remaining retail applications refused and all of the wholesale applications, no opposition of any kind was made in court, yet the court had, to a certain extent, personal knowledge of the facts pertinent to the cases, and made careful inquiry from reliable sources as to the necessity for these licenses for the accommodation of the public and the fitness of the applicants, and upon that information the action of the court was based. All of the wholesale

applications except those from Clearfield borough were located
in the midst of mining districts, the populations of which are
largely foreign.

" As to the application of the American Brewery Company
in question, we were clearly of opinion there was no necessity
for it, and having had a due regard to the number and charac-
ter of the petitioners for said license, and considering the best
interests of the community and of the county at large, together
with the facts and information had and obtained as aforesaid,
and exercising what we considered a sound discretion, the ap-
plication was refused. The question of law then arises, had
we any right to thus refuse the license ?  There being no re-
monstrance filed, was there any issue framed as to the question
of necessity for the court to pass upon ?  Was there anything
in the case upon which the court could exercise a discretion,
or was it bound to enter a judgment, as by default, that the
license be granted?  We decided the questions in favor of our
right to act as we did, and are of opinion we had legal author-
ity for doing so.

" Section 6 of the act of June 9, 1891, P. L. 256, under
which the application in question was made, reads as follows,
viz. : ' The said court of quarter sessions shall hear petitions
from residents of the county, in addition to that of the appli-
cant, in favor of and remonstrance against the application for
such license, and in all cases shall refuse the same whenever in
the opinion of said court, having due regard to the number and
character of the petitioners for and against said application, such
license is not necessary for the accommodation of the public, or
that the applicant or applicants is or are not fit persons to whom
such license should be granted, and upon sufficient cause being
shown or proof being made to the said court that the party hold-
ing a license has violated any law of this commonwealth relat-
ing to the sale of liquors, the court of quarter sessions shall,
upon notice being given to the person so licensed, revoke said
license.'  Except as to the part relating to the residence of the
petitioners, and the omission of the matter of entertainment of
strangers and travelers, this section is a literal copy of sec-
tions 7 and 8 of the retail act of May 13, 1887.

" In the case of Raudenbusch's Petition, 120 Pa. 342, which
was an application for retail license under act of May 13, 1887,

PAXSON, C. J., says : 'I will not consume time with an extended discussion of the right of the judges of the court of quarter sessions to exercise their discretion in the granting of license. It has been exercised by that court almost time out of mind, and the power has again and again been affirmed by this court. This discretion, however, is a legal discretion, to be exercised wisely and not arbitrarily. A judge who refuses all applications for license, unless for cause shown, errs as widely as the judge who grants all applications. In either case it is not the exercise of judicial discretion, but of arbitrary power. The law of the land has decided that licenses shall be granted to some extent, and has imposed the duty upon the court of ascertaining the instances in which the license shall be granted. In order to perform this duty properly the act of assembly has provided means by which the conscience of the court may be informed as to the facts ; it may hear petitions, remonstrances or witnesses, and we have no doubt the court may in some instances act of its own knowledge. The mere appearance of an applicant for license, when he comes to the bar of the court, may be sufficient to satisfy the judge that he is not a fit person to keep a public house. The judge is not bound to grant a license to a man whom he knows to be a drunkard or a thief, or has actual knowledge that his house is not necessary for the public accommodation.'

" In Nordstrom's Petition, 127 Pa. 553, which was an application for a wholesale license under the act of May 24, 1887, after stating that the ' existing law ' referred to in that act was to the laws then in force on the subject, including the act of March 22, 1867, the Court says: ' We do not think it necessary to discuss the act of 1867. It places wholesale and retail dealers upon the same plane, and confers upon the courts of quarter sessions the same discretion in granting or refusing a wholesale license as in the case of a retail license. It makes no distinction between them.'

" In the case of Martin Knarr's Petition, 127 Pa. 555, which was an application for brewer's license under the act of May 24, 1887, WILLIAMS, J., says : ' The petitioner was an applicant for a license to sell malt and brewed liquors by the gallon and larger measure as a brewer. His application was refused by the court of quarter sessions. He comes now into this court

and asks a writ of mandamus, requiring the judges of that court to grant his license or show cause.   We learn from the petition and the accompanying copy of the record the following facts, about which there is no controversy or room for doubt: (1) The petition was actually heard at the proper time by the court. (2) After hearing, the application was refused.   (3) There was no remonstrance on file, and no parties appearing to object by evidence or otherwise to the granting of the license.   The indorsement on the back of the petition is "The within petition having been presented in open court, on due consideration thereof a license is refused."   The single question presented is, whether the court had the right, after duly considering the application, to refuse it, in the exercise of a judicial discretion, moved by the personal or official knowledge of the judges thereof . . . . In the act under which this application is made, the act of May 24, 1887, P. L. 194, the existence of this power to hear and determine applications for license on their merits, rather than on the face of the petition, is recognized and regulated thus: "The said court shall fix by a rule or standing order a time at which all persons applying or making objection to applications for licenses may be heard by evidence, petition, remonstrance or counsel."   Instead, therefore, of taking away or limiting the power over licenses previously residing in the courts, the act of May 24, 1887, distinctly recognizes it and makes provision for the manner in which it shall be exercised.'

"Now while the cases of Nordstrom's Petition and Martin Knarr's Petition are for wholesale licenses under the act of May 24, 1887, and the present application is under the act of March 9, 1891, we are of opinion that greater latitude is given to the court of quarter sessions in the matter of exercising discretion in the latter than the former act.   PAXSON, C. J., in Pollard's Petition, 127 Pa. 517, says: 'We decided in Raudenbusch's Petition, 120 Pa. 328, that the granting of a license to sell liquor at retail, under the act of May 13, 1887, P. L. 108, was within the discretion of the quarter sessions, and not reviewable upon certiorari.   The court below applied the doctrine of that case to applications for licenses, made under the act of May 24, 1887, P. L. 194, providing for the licensing of wholesale dealers in intoxicating liquors.   The narrow question presented for our consideration is, whether, under the act

relating to wholesale licenses, the court has the same discretion to grant or refuse a license as it has under the prior act relating to retail licenses. It requires but a glance at the two acts to see that their object is essentially different. The retail act of May 13th was intended to restrain the sale of liquors. This clearly appears in its title, which reads: "An act to restrain and regulate the sale of vinous and spiritous, malt or brewed liquors, or any admixtures thereof." This was the construction placed upon that act in Raudenbusch's Petition, supra. The act of May 24th, providing for wholesale licenses, was a revenue act. There is not a word in it to indicate any intention of restraining the sale of liquor. . . . An extended argument is not needed to show that the discretion conferred upon the court by the retail act of 1887 does not extend to the wholesale act. A few words upon this subject, however, may be appropriately added. As before observed, the object and leading thought in the former act was to restrain and regulate the sale of liquor; that is to say, to restrain its sale to the consumer. It was for such reason that a large discretion was conferred upon the quarter sessions. If we contrast the second section, above quoted, of the wholesale act, with the seventh section of the retail act, the difference between them is palpable. The seventh section is as follows: . . . We cannot incorporate or read into the wholesale act the above section of the retail act, for the reason that we are not clothed with legislative powers. Moreover it is inapplicable to wholesale licenses. What has the court to do with the question whether a particular wholesale license is necessary for the accommodation of the public and entertainment of strangers or travelers?'

"It would seem that on account of the decisions of the Supreme Court in Pollard's Petition, and in the case of Prospect Brewing Co.'s Petition, 127 Pa. 523,—construing the wholesale act of 1887 (as also the special acts in force in the counties of Philadelphia and Allegheny), holding that it was a revenue act and not an act to restrain the sale of liquors; that the courts of quarter sessions had nothing to do with the question of necessity, because not a qualification in the act; and that the discretion conferred upon the court was qualified and limited and not so large as that conferred by the retail act of 1887, and that the provisions of the retail could not be read into the wholesale

act—the legislature passed the wholesale act of June 9, 1891. In doing so as far as possible they duplicated the retail act of 1887, incorporating into it all of the provisions that could be made applicable to a wholesale law, including the 7th section, which the Supreme Court could not read into the wholesale act of 1887, and prevented the same construction being placed upon them. The title of the retail act reads : ' An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof; ' and that of the act of 1891 is the same, with the words ' by wholesale ' added. Like the retail act of 1887 and unlike the wholesale act of that year, the act of 1891 is an act in restraint of the sale of liquors, rather than a revenue act, and under it it is made the duty of the court of quarter sessions, in passing upon the wholesale license applications, to consider both the questions of fitness and necessity, and it would seem the legislature intended to clothe the court with the same discretion in granting licenses as was conferred by the retail act of 1887. It is true the two kinds of licenses differ in many respects, the wholesale being largely intended to supply the retail dealer with goods with which to accommodate his customers, yet in practice a considerable proportion of the wholesale trade is by sales direct to the consumer. As we look at it the purpose of the license laws is to promote the cause of temperance by restraining and regulating the sale of liquors, by granting licenses to sell to a limited number of persons fit to engage in it, whom the law will hold responsible for its proper execution. It recognizes that people will use intoxicating liquors, and that, such being the case, it is better that they do their drinking at a hotel or restaurant under proper restraint than in their own homes, in the presence and often with participation of their families, regardless of sex or age, without restraint. And while it is true the consumer can, at a hotel or restaurant, get liquor to take home with him, yet from a wholesale dealer he can get it cheaper and in larger quantities.

. " In accordance with these views the 190 applications presented at the recent license court were disposed of. We were satisfied the disposition made of all of them, including the application in this case, was in accordance with the best interests of the people of the county, and that the discretion exercised

was warranted by law.    And while we still entertain the same
views we are not unmindful of the fact that in the quite recent
case of Johnson's License, 156 Pa. 322, (not herein before
cited,) the Supreme Court—GREEN, Justice, expressed views
tending to materially limit the discretion of the court of quarter
sessions in passing upon and refusing wholesale licenses.    It
is but fair to say that at the time the license in question was
refused we had not seen or heard of that decision, and therefore
cannot be accused of disregarding it.    But as we look at it, the
case of Johnson's License is unlike the one under consideration.
That was for a distiller's license and necessary to enable the
applicant to carry on a manufacturing business.    The principal
trade of the distiller is to sell to the wholesale dealer; he in
turn to the retail dealer; and he direct to the consumer.    It
seems reasonable that the court should not have the same kind
and extent of discretion in all kinds of licenses, and that the dis-
cretion should be greatest in the cases of hotels and restaurants,
whose principal trade is to sell liquor by the drink to the con-
sumer, and least in those of distillers, who are manufacturers
and farthest removed from the consumer.    While we did not
have the benefit of the recent decision in disposing of this ap-
plication, we are not convinced any error was made in it, and
no application having been made for a re-hearing before cer-
tiorari issued, and there being no opposition to the license by
counsel, and feeling it to be but fair that the reasons for the
refusal of the license be given, we take this opportunity of
stating and filing them of record."

*Errors assigned* were (1) above order, (2) opinion.

*James H. Kelley* and *S. V. Wilson*, for appellant, cited: Pol-
lard's Petition, 127 Pa. 521; Prospect Brewing Co.'s Petition,
127 Pa. 523; Nordstrom's Petition, 127 Pa. 551; Knarr's Pe-
tition, 127 Pa. 554; Johnson's License, 156 Pa. 324.

No argument or paper-book was presented contra.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 30, 1894 ·
    This case presents substantially the same questions that have
been considered and disposed of in opinion just filed in " Ap-

plication of A. T. and C. M. Mead," etc., No. 33, January term, 1894. [The preceding case.]

For reasons given in that case, and in the opinion of the court sent up with the record in this case, we think the learned judge's refusal of the application was in the exercise of a sound legal discretion, and therefore not reviewable here.

Decree affirmed with costs to be paid by petitioners.