Wholesale Liquor Licenses of William K. Thomas and John Mackert.   Appeal of William K. Thomas et al.

*Liquor laws—Wholesale liquor license—Necessity for license—Individual opinion of judge.*

Where the record of an application for a wholesale liquor license shows that the case was heard, considered and decided by the court below, and that the license was refused on the ground that in the opinion of the court it was not necessary, the Supreme Court will not reverse the order, although the action of the lower court was based upon the individual opinion of the judge, without any evidence being heard, or remonstrance filed.

Argued May 27, 1895. Appeal, No. 9, Jan. T., 1895, by William K., Thomas and John Mackert, from order of Q. S. Northumberland Co., Feb. T., 1895, No. 1, refusing to grant a wholesale license. Before' GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Application for a wholesale liquor license.

The application was refused, SAVIDGE, P. J., filing the following opinion :

" I know the applicants to be ' fit persons ' for the grant of a license to sell liquor by wholesale.   They are good men who could safely be intrusted with the privilege.   The license is refused, because I do not think there is a necessity for it.   This conclusion is not reached from the proofs presented in open court.   It could not be.   There is no remonstrance, and the record and proofs are altogether in favor of the applicants.   (In addition to the 24 names on the original petition, there has been filed a supplemental petition with 87 signatures.)   The gentlemen signing the petition are citizens of high character and standing.   They ought to be, and probably are, familiar with the situation.   Many of them, by reason of their business relations and their thorough knowledge of the demands of the community, ought to know more than I can of the necessity for this license.   Yet under the law, I feel justified in refusing.

" From ' acquaintance with the district ' I have made up my mind the house is not necessary.

" The judgment of the court may be founded upon my knowledge as an individual: Kelminski's License, 164 Pa. 231.

"This is an old doctrine reiterated. It ought to be as familiar to counsel as to the court. It is only too well known to the people of this district. They habitually rely upon the court to act of its own knowledge obtained from 'observation of the applicant and acquaintance with the district;' that is, knowledge individually obtained. They make no effiort to protect themselves against unfit persons and from unnecessary licenses. They rest that burden upon the court, relying upon the individual knowledge of the judge to overcome the proofs and petitions, no matter how strong, for the license.

"It is assumed that methods altogether different from the ordinary are to maintain in the license court. This is unfortunate. Nevertheless the law sanctions it and the people have come to believe in it thoroughly.

"It is distasteful to the court to rest the judicial determination of any question upon the knowledge of the judge acquired off the bench. Aside from licenses, I know of no judicial proceeding in which it would be tolerated.

"In answer to the argument that a license court ought to be conducted on the ordinary lines of procedure, I have only to point to the decisions which say otherwise, and to the well known attitude of the people forcing this cause.

"Prior to this year, remonstrances against licenses in the coal region portion of the county, (whence come 260 of the 344 applications on file,) have been practically unheard of. It is well known that the remonstrance filed this year was the outcome of a general misunderstanding of the decision in 'Kelminski's License.'

"The community believed the effect of that decision to be that the court could no longer raise an issue without a remonstrance, and decide such issue upon the individual knowledge of the judge. That belief has been dissipated, and it can safely be assumed that remonstrances will cease. The burden will rest, as heretofore, upon the judge as an individual, or the court, just as you please to put it. That burden I must assume. I have assumed it in this case, as in many others decided at this term.

"Of course, I rarely have the desirable familiarity with applicants, houses, or the necessity for licenses applied for in the coal region. The number alone precludes personal investiga-

tion, and I am too far away to acquire the knowledge otherwise. That should not prevent my making use of the knowledge I do have of the town in which I live.

" There is force in the suggestion that the community of Shamokin should receive, at the hands of the court, the same treatment in license matters as Sunbury.  I try to give it, using every means of knowledge at hand and every effort to treat one section of the county like another, and all fairly.  If, under existing conditions, I should make mistakes, and in a measure fail, it is the fault of the law and not of the court.

" It is to be remembered that not one farthing of the vast revenue acquired from the licenses is available for any needed investigation.  We are powerless to call in witnesses (for who will pay them), or to take one step in the direction of a proper enlightenment.  There is, in the anthracite coal region, but one side to a license case, except the judge interpose such individual information and knowledge as he may be able to command. Possibly the legislature anticipated that the people would take care of themselves in this matter, as they do in private litigation and in public matters, and matters political.  This anticipation may be realized elsewhere, not here, nor ever will be so long as the law permits the people to compel the judge to make use upon the bench of what he knows as a citizen, to the end that the community and the court may not be scandalized by an improper grant of licenses.

" Nor are the people so much to be complained of, for it is honestly believed by them, (why, I know not,) that the judge has an information in license matters, which he rarely, if ever, has even the means of acquiring.

" It would seem that the legislature, even though deeming it unwise to provide fund or official for supervision of the liquor traffic, might have provided some method whereby a license court could, in a judicial way, come by the information which would enable it to intelligently perform the onerous duties put upon it.  It is to be hoped that the successors of the legislators who enacted the Brooks Law, may, in the near future, see their way clear to do this.  Such a provision would, to that extent at least, have made the act true to the title, ' An act to restrain,' etc.

*Error assigned* was order refusing to grant license.

*Lewis Dewart* and *C. B. Witmer, J. H. McDevitt* with them, for appellant, cited: Kelminski's App., 164 Pa. 231; act of 1891, P. L. 259; Johnson's License, 156 Pa. 324; Mead's License, 161 Pa. 377; American Brewing Co.'s License, 161 Pa. 378; Gross's License, 161 Pa. 346.

No paper-book filed or argument offered for appellee.

PER CURIAM, June 3, 1895:

This was an application for a wholesale liquor license. The record shows that the case was heard, considered and decided by the learned court below, and that the license was refused on the ground that in the opinion of the court it was not necessary. It is true it was the individual opinion of the judge upon which this action was taken, but we have so many times held that such opinion may be the basis of decision that we regard the subject as settled, and do not deem it necessary to review the cases or to change them: Gross's License, 161 Pa. 344; Mead's License 161 Pa. 375; American Brewing Co.'s License, 161 Pa. 378; Kelminski's App., 164 Pa. 231.

Decree affirmed and appeal dismissed at the cost of appellants.