# CASES

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Donoghue's License.    Donoghue's Appeal.

*Liquor law—Discretion of license court.*

The discretion committed to the license court is not an arbitrary but a judicial discretion. This discretion is controlled absolutely on some points by the provisions of the statutes as to matters of fact, such as citizenship of the applicant, his exclusive interest in the business, etc. On other points, such as fitness of the applicant, the necessity of the house, etc., it is to be exercised in accordance with the judgment of the court upon its information in the premises, derived from the evidence, together with personal observation and knowledge.

*Liquor law—Appellate jurisdiction in reviewing quarter sessions.*

The appellate courts possess and exercise the powers of the King's Bench and are authorized to examine and review the proceedings of the court of quarter sessions, in any matter specially committed to it by statute, so far as to inquire and determine the extent and limits of its power and the regularity of its exercise. The proper mode of asserting this jurisdiction is by bringing the record before the appellate court by certiorari, which will enable that court in a case of clear abuse of discretion to reach the difficulty.

*Liquor law—License—Proper discretion of quarter sessions not reviewable.*

The discretion of the quarter sessions once properly exercised is not reviewable; it is the discretion of the quarter sessions, exercised in the line of inquiry directed by the statute, and not that of the appellate court, which the law requires. The presumption is that the decree is judicial and not arbitrary.

*Reasons given by the lower court, for refusing a license, reviewable.*

Though the reasons given for granting or refusing a license are tech-

VOL. V—1                                                    (1)

nically no part of the record brought up with the writ of certiorari, it by no means follows that they may not be considered by the appellate court in determining whether the license court has proceeded according to law.

These reasons may be filed at any time during the term and even after the filing of a certiorari to remove the record to the appellate court. It is only by reviewing the reasons that the appellate court can determine whether the lower court has acted on other grounds than those defined by the statute.

*License court may not impose conditions.*

When it appears that the license judge has acted on reasons which the law does not recognize as valid, his action stands on no legal basis and it is the duty of the appellate court to correct it.

The refusal of the license court to grant a license because the applicant had " made a promise last year not to apply for a license this year " is not a legal reason. For a court thus to bargain with a suitor is a proceeding wholly unwarranted in law nor is there any ground on which it may be recommended. There is an aspect of duress in the action of the court requiring the applicant to give such promise and duress by the court imposes no greater obligation than duress by a private person.

Argued May 3, 1897. Appeal, No. 46, Oct. T., 1897, by Jeremiah G. Donoghue, from judgment of Q. S. Phila. Co., March T., 1897, No 706, refusing a retail liquor license. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Reversed. RICE, P. J., dissents.

Petition for retail liquor license. Before SULZBERGER and McMICHAEL, JJ.

It appears from the record that an application of Jeremiah G. Donoghue for a retail liquor license at the southeast corner of Eighth and Vine streets, Philadelphia, was filed in the court of quarter sessions, Philadelphia county, No. 737, March T., 1896. This application was at first refused but upon a petition for a rehearing on May 12, 1896, an opinion in writing was filed as follows by WILLSON and BRÉGY, JJ.

" In the matters of the petitions filed for a rehearing of applications for licenses to sell liquor." (There were a large number of such petitions to which this general opinion applies, among them being the present case, No. 737, of March term, 1896.)

So much of this opinion as relates to this case sets forth that the court is satisfied that the applicant herein had made vigorous and unusual efforts to comply with the requirements of the

law, and that any instance of apparent violation had resulted from circumstances which made discrimination difficult; that the court was unwilling to refuse license on the ground that the law had been violated ; that they were, however, of the opinion that it would be to the advantage of the immediate locality to be relieved from the existence of a saloon ; and concludes that if the applicant would file a stipulation that he would not again apply for a license in the same locality, license would be granted, " otherwise the order already made will stand."

On February 6, 1897, the application of Jeremiah G. Donoghue for a retail liquor license at the same place was filed in the court of quarter sessions of Philadelphia county, March term, 1897, No. 706, the application bonds being in the usual and proper shape.

On March 8, 1897, a remonstrance of the Law and Order Society of Philadelphia was filed.

On March 24, 1897, order (indorsed on application) : " License refused.    C. B. M., M. S., March 24, 1897."

April 5, 1897, official report of Fred. D. Biddle, official stenographer of the court of quarter sessions of Philadelphia county, certifying the same to be a full, true, accurate and correct transcript of the official stenographer's notes of the hearing in the matter of the application of Jeremiah G. Donoghue for a retail liquor license at the southeast corner of Eighth and Vine streets, on March 23, 1897, and of the oral opinions of SULZBERGER, J., and McMICHAEL, J., delivered at the said hearing.

Certificate and order of SULZBERGER and McMICHAEL, JJ. (appended to the foregoing report of official stenographer) :

Approving the said report of the hearing and opinions, and directing " that said report of both the hearing and our opinions be filed of record in the said matter."

The opinions of the court below, stenographically reported in order to be filed of record, are as follows :

By SULZBERGER, J. :

Upon the question involved in the application of Jeremiah G. Donoghue the court is divided.

I, for my part, look upon the subject in this manner : This court has established the general rule that licenses heretofore granted shall be renewed unless a valid remonstrance is filed

against them.  A remonstrance has been filed against Mr. Dono-
ghue.  No evidence has been offered tending in any way to
impeach either the general character of the saloon or the general
character of Mr. Donoghue, or the necessity of the place for the
public convenience.  Were there nothing more, it would there-
fore be simply necessary to grant the license.  But there is
something more.  There is on record a stipulation filed last
year, in which Mr. Donoghue wrote and signed the following
paper :

"I hereby pledge myself, in consideration of a license being
granted me for the year to June 1, 1897, not to make applica-
tion for a renewal of said license for the above locality."  The
contention is presented that the application this year, being in
contravention of the terms of that stipulation, is such an act as
is inconsistent with the moral character and the fitness required
by the license law of 1887.  In my opinion the question lies
deeper than that ; it goes to the fundamental right of the citi-
zen and the enjoyment of freedom under the constitution of
Pennsylvania.  In my judgment a court has no power or author-
ity whatever except that which is conferred upon it by the con-
stitution and the laws, and a stipulation or a promise exacted
by a court not in conformity to the constitution and laws, and
outside of any authority by them conferred, is, in my judgment,
an absolute nullity, and any act based upon it imposed upon a
citizen stands upon no higher ground than an act or condition
unlawfully imposed by a private person.  I am of the opinion,
therefore, that we erred last year in imposing this stipulation,
and that the stipulation should be stricken from the record as a
paper of no validity.  It follows necessarily that if the act is
null it can have no legal effect upon the character of the appli-
cant.  Not that a refined kind of ethics would refrain from
criticising him for not complying with this stipulation, even
though it should not have been exacted from him.  But I take
it that the provision of the act of 1887, requiring that a person
applying for a license for the sale of liquors at retail shall be a
citizen of the United States, of temperate habits, and good moral
character, is not to be understood as setting up the highest ethi-
cal character.  It means good moral character as it is used
among men in the ordinary business of life, not that high type
which ought to form the ideal of every virtuous person.  I would

therefore grant the license; but, as my learned colleague does not agree with me in that conclusion, for reasons which he will presently state himself, the license must be refused.

By McMichael, J. :

In my opinion this license should be refused.   The act of 1887 was passed for the public good.   The object of the legislature was the public good, and the gain or loss of the tavern keeper is a secondary consideration, material chiefly as a motive for a proper compliance with the law.   These are the words of a great jurist, and well express what the intention of the legislature was in the passage of this act.   [In passing upon the requirements of an applicant the act provides, " that licenses for the sale of vinous, spirituous, malt, or brewed liquor at retail, in quantities not exceeding one quart, shall be issued to citizens of the United States of temperate habits and good moral character," and without expressing any opinion upon the right of this court to impose stipulations, I cannot consider a citizen of the United States one of good moral character who voluntarily files a stipulation that he will not apply again for the succeeding year before this court, and in violation of that agreement does make an application for a license.   I do not decide this on high ethical grounds, though I am inclined to think that the education the old Persians gave their children, " to ride and shoot and tell the truth," is the best training that men may have ; but I decide it under the requirements of the act of assembly, which puts the burden upon me, as one of the judges of this court, of entering a deliberate judgment, if I consent to grant this license, that a man is a man of good moral character who breaks a promise voluntarily obtained, or voluntarily offered— for I cannot agree that this court exercised duress upon the citizen.   It may have exceeded its constitutional power, for I have grave doubts whether this court has the right to put any such stipulation upon an applicant for a license.   But when a man has made a promise last year not to apply for a license this year, and has come into court with an application for a license in violation of that promise, my judgment and my judicial opinion is that he is not a man of good moral character as contemplated by the act of assembly.]   [2]

Upon the question of the stipulation I have no desire at this

time to dissent from my learned colleague.   On the contrary, I am inclined—while we do not decide that question now—to accede to what he has said upon that question.

SULZBERGER, J.: It is therefore understood that we do not now decide upon the validity of stipulations referring to the conduct of the business.   Our decision here only refers to the validity of stipulations referring to some act to be done or refrained from after the expiration of the license.

April 7, 1897, appeal of Jeremiah G. Donoghue from the judgment of the said court of quarter sessions to the Superior Court of the commonwealth of Pennsylvania.

*Errors assigned* were (1) in refusing a retail liquor license applied for.   (2) In refusing a retail liquor license as applied for for the reasons set forth in the opinion of McMICHAEL, J., filed of record in the matter of the application for said license in the following words (reciting a portion of the opinion of McMichael, J., as set out in brackets above).   (3) In deciding that the stipulation filed by Jeremiah G. Donoghue that he would not apply again for the succeeding year before the license court was his voluntary act.   (4) In deciding that the appellant is not a man of good moral character within the meaning of the act of assembly, when no evidence was presented or allegation made which justified such decision.   (5) In deciding that the act of applying for a license after having previously filed a stipulation agreeing not to do so, is per se conclusive evidence that the appellant is not of good moral character.

*Henry J. McCarthy*, with him *Leonard R. Fletcher*, for appellant.—Any order, ruling, remark or charge of the court below made in the cause when properly authenticated, becomes a part of the record and is reviewable as such: Act of May 24, 1887, P. L. 199.

This court has repeatedly considered and reviewed the opinion of the court below as part of the record in cases of appeal from the judgment of courts of quarter sessions refusing liquor licenses.   Doberneck's Appeal, 1 Pa. Superior Ct. 99; Gross's License, 1 Pa. Superior Ct. 640; Lauck's Appeal, 2 Pa. Superior Ct. 53; Babb's License, 2 Pa. Superior Ct. 38.

The Supreme Court has also considered and reviewed as part of the record on appeal, or certiorari, the opinion of the court of quarter sessions' judge refusing a liquor license: Johnson's License, 165 Pa. 315; Kelminski's License, 164 Pa. 231; Liquor Licenses, Appeal of Thomas, 169 Pa. 111.

The error complained of is apparent on the record.

In filing a stipulation not to again apply for a license the present petitioner was under a sort of moral duress: Railroad Co. v. Coal Co., 79 Ill. 121; Railroad Co. v. Pattison, 41 Ind. 312; Railroad Co. v. Stiner, 61 Ala. 559; Swift Co. v. U. S., 111 U. S. 22.

That particular instances cannot be shown in order to prove bad character is a proposition laid down by Greenleaf, and supported by authority: 1 Greenleaf on Evidence, 55; Engleman v. State, 2 Ind. 91; People v. Milgate, 5 Cal. 127; Carter v. Com., 2 Va. Cases, 169; Sorrelle v. Craig, 9 Ala. 534; Vernon v. Tucker, 30 Md. 456; Commonwealth v. Rogers, 136 Mass. 158.

*Lewis D. Vail*, for appellee.—The only record to be considered here is the petition and decree: Carlson's license, 127 Pa. 330; Com. v. Kerns, 2 Pa. Superior Ct. 59.

The opinion of the court or its reasons, does not form any part of the record unless it is embodied in the decree: Carlson's License, 127 Pa. 330; Gemas' License, 169 Pa. 43; Thomas' Appeal, 169 Pa. 111; Doberneck's License, 1 Pa. Superior Ct. 99, 637; Com. v. Kerns, 2 Pa. Superior Ct. 59; Lauck's Appeal, 2 Pa. Superior Ct. 53; Babb's License, 2 Pa. Superior Ct. 38.

The court need not give any opinion or any reasons: Toole's Appeal, 90 Pa. 376; Quinton's Appeal, 169 Pa. 115; Com. v. Kerns, 2 Pa. Superior Ct. 59.

The petitions, pro and con, are not matters of record, but in the nature of evidence for the information of the conscience of the court hearing the case: Fowler's License, 2 Pa. Superior Ct. 63.

The matter of stipulations or agreements is ably discussed by Judge HARE in Gerstlauer's License, 5 Dist. Rep. 97.

As to the morality. That must be left to the discretion of the court of quarter sessions and will not be retried or reviewed by this court. This has been decided many times.

OPINION BY SMITH, J., July 23, 1897:

There never has been any question, under the statute regulating the sale of liquor at retail through licenses granted by the courts, respecting the rights of the applicant for license and the power of the court. The subject was carefully reviewed in Schlaudecker v. Marshall, 72 Pa. 200, with reference to the laws then in force, and again in Raudenbusch's Petition, 120 Pa. 328, in which the act of May 13, 1887, was first considered by the Supreme Court. The views set forth in these cases have since been repeatedly affirmed: Sparrow's Petition, 138 Pa. 116; Gross's License, 161 Pa. 344; Mead's License, 161 Pa. 375; American Brewing Co.'s License, 161 Pa. 378; Kelminski's License, 164 Pa. 231. The applicant has no absolute right to a license, though complying with all the statutory requirements. He has a right to a hearing and a decision on his application. When the court has heard and decided, its whole duty is performed. The license judge is not required to give reasons for his decision: Toole's Appeal, 90 Pa. 376; Ostertag's Petition, 144 Pa. 426. He is not bound to set out legal reasons for his action; he is only bound to have them: Gross's License, supra, DEAN, J. Where the record shows a hearing and a decision, adequate reasons will be presumed. "The act of assembly has provided means by which the conscience of the court may be informed of the facts; it may hear petitions, remonstrances, or witnesses, and we have no doubt the court may in some instances act of its own knowledge:" Raudenbusch's Petition, supra, PAXSON, J.

The course of proceeding is thus concisely stated by McCOLLUM, J., in Kelminski's License, supra. "The application for a license must conform to the provisions of the statute under which it is made, and there must be a hearing upon it at a time fixed by a rule or standing order of the court, when the applicant, and all persons objecting to his application, may be heard by evidence, petition, remonstrance or counsel. It is the duty of the court to receive and consider petitions, in addition to that of the applicant, for and against the application, and to refuse the license whenever, in its opinion, having due regard to the number and character of the petitioners, the same is not necessary for the accommodation of the public, or the applicant is not a fit person to have it. It is obvious therefore that in form-

ing the opinion on which the grant or refusal of a license should rest, the petitions for and against it cannot be entirely ignored. They must be fairly considered in connection with whatever may legitimately affect the exercise of the discretion with which the court is clothed in respect to the application. The law evidently contemplates action by the court in accordance with the knowledge it has of the character of the applicant and the needs of the locality in which he proposes to carry on business under the license, but this action is not necessarily founded upon the knowledge derived exclusively from the evidence and petitions produced on the hearing. It may, and sometimes very properly does, act of its own knowledge obtained from observation of the applicant and acquaintance with the district. If the court, from such observation and acquaintance, knows that the applicant is not a fit person, or that his house is not necessary for the accommodation of the public, the license may be refused on such knowledge, although the petitions present a prima facie case for it." The applicant may also be required to appear in person at the hearing, and for his failure so to do the license may be refused : Wheelin's Case, 134 Pa. 554. " The mere appearance of an applicant for license may be sufficient to satisfy the judge that he is not a fit person to keep a public house: " Raudenbusch's Petition, supra, PAXSON, C. J.

The requirements of the act of May 13, 1887, relate both to the petitioner and his place of business. As to the petitioner, it must appear that he is a citizen of the United States, of temperate habits, and good moral character, and a fit person to receive a license ; that he is not in any manner pecuniarily interested in the sale of liquor at any other place in the county ; that he is the only person in any manner pecuniarily interested in the business asked to be licensed, and his petition must aver that no other person shall be so interested during the continuance of the license. It must further appear from the petition whether the applicant has had a license revoked during the preceding year; and, after a revocation for " permitting the customary visitation of disreputable persons, or keeping a disorderly house," or on conviction of more than one offense against the statute, he cannot again be licensed. As to the place, it must be " necessary for the accommodation of the public and entertainment of strangers and travellers," and must not be " any room where groceries are sold at wholesale or retail."

As to the nature and scope of the discretion committed to the license court, it is not an arbitrary but a judicial discretion. "In the cases in which our license legislation has been considered there is a concurrence of opinion that the discretion which the court of quarter sessions has in passing upon applications for license is judicial in its nature, and should be exercised with due regard to the petitions and evidence in each case. An arbitrary refusal to thus exercise it frustrates the legislative purpose, and disregards the plain duty laid upon the court by the law makers. A decree founded on such refusal ought therefore to be set aside:" Kelminski's License, supra, McCOLLUM, J. "If a judge should refuse a license because in his opinion the law authorizing a license is a bad law, or if he should grant all licenses because he believed the law wrong as tending to confer a privilege on a special few, in either case there would be no exercise of judicial discretion; both would be the mere despotic assertion of arbitrary will by one in power:" Gross's License, supra, DEAN, J. This discretion is controlled absolutely on some points by the provisions of the statute as to matters of fact, such as the citizenship of the applicant, his exclusive interest in the business, etc. On other points, such as the fitness of the applicant, the necessity for the house, etc., it is to be exercised in accordance with the judgment of the court, upon its information in the premises, derived from the evidence, together with personal observation and knowledge. It does not extend to the granting of a license when the case falls short of the statutory requirements, nor, on the other hand, to the refusal of a license for reasons wholly unrelated to the conditions fixed by the statute, when these have been complied with by the applicant.

With respect to the powers of the appellate court in the premises, as was said by Chief Justice PAXSON, in Pollard's Petition, 127 Pa. 507: "We are in no doubt as to our power to revise the proceedings below upon this writ [of certiorari]. This court possesses and exercises the powers of the King's Bench, and it was said of them by the late Judge SHARSWOOD, in Commissioners' Appeal, 57 Pa. 452: 'It is beyond all question that, under these extensive powers, this court is authorized to examine and review the proceedings of the court of quarter sessions, in any matter specially committed to it by statute, so far as to

inquire and determine the extent and limits of its power and the regularity of its exercise. It is equally clear that the proper mode of asserting this jurisdiction is by bringing the record of its proceedings before us for inspection by writ of certiorari.' Upon the writ of certiorari we may review the proceedings so far as to see whether they have kept within the limits of the powers thus conferred, and have exercised them in conformity with law." And later, in Johnson's License, 165 Pa. 315, it was said: "In a clear case of an abuse of discretion, a certiorari to bring up the record for review might enable us to reach the difficulty:" WILLIAMS, J.

While the revisory power of the appellate court in these cases is undoubted, what may be considered in reviewing them has at times been made a question. The writ of certiorari brings up only the record, consisting of the petition and order. The appellate court, therefore, cannot examine the evidence, and review the case on the merits. "If the court has in a lawful manner performed the duty imposed upon it, it is not our business to inquire whether it has made a mistake in its conclusions of fact. Whether the same facts induce in our minds the same belief as in that of the court below, as to the character of the applicant, or other material averments, is wholly immaterial; it is the discretion of the court of quarter sessions, not ours, that the law requires. If the record shows that the decree was had after hearing at a time fixed by rule or standing order, the presumption is, the decree is judicial and not arbitrary, and this presumption is not rebutted by an argument from evidence that the court ought to have reached a different conclusion:" Gross's License, supra, DEAN, J. If the license judge "refuses or neglects to hear we may enjoin upon him the performance of that duty; but when he has heard and decided, we cannot require him, except in extreme cases, to lay his modes of reasoning and his moral standards before us, that we may revise his discretion and substitute our own:" Knarr's Petition, 127 Pa. 554, WILLIAMS, J. "All we can do is to see that the license court has proceeded according to law:" Collarn's Petition, 134 Pa. 551, PAXSON, C. J.

Though the reasons given for granting or refusing a license are technically no part of the record brought up with the writ of certiorari, it by no means follows that they may not be con-

sidered by the appellate court in determining whether the license court " has proceeded according to law." On the contrary, the Supreme Court has not only made these reasons the basis of its judgment in reviewing the record, but has declared that they may properly be filed at any time during the term, and even after the filing of a certiorari to remove the record to the appellate court: Pollard's Petition, 127 Pa. 507 ; Am. Br. Co.'s Petition, 161 Pa. 378 ; Mead's License, 161 Pa. 375. In Thomas's Appeal, 169 Pa. 111, it was said, Per Curiam: " The record shows that the case was heard, considered and decided by the learned court below, and that the license was refused on the ground that in the opinion of the court it was not necessary. It is true it was the individual opinion of the judge upon which this action was taken, but we have so many times held that such opinion may be the basis of decision that we regard the subject as settled, and do not deem it necessary to review the cases or to change them." We have examined the record in that case, and observe one feature of the proceedings not appearing in the report. The order was thus indorsed on the bond: " February 18, 1895, after hearing, the sureties on the within bond are approved, and the license as prayed for is refused. See opinion filed." The opinion was entirely distinct from the order and contained a discussion of the facts of the case and of the law, with the reason for refusing the license referred to by the Supreme Court.

Whatever the judicial view of the reasons in relation to the record, it is only by reviewing them that the appellate court can determine whether the lower court has acted on other grounds than those defined by the statute. If they are not reviewable there is no way of correcting a decision by the license judge based on grounds which the law does not recognize as valid. A convincing reason for reviewing them is suggested by Chief Justice Paxson, upon the refusal of a license in Prospect Br. Co.'s Petition, 127 Pa. 523 : " If the record does not disclose the reason for the refusal, it would be impossible to review the action of the court below, either upon a writ of certiorari or other process, no matter how illegal or arbitrary the action of the court might be, or how vast the interests that are thus stricken down. As to such matters a quarter sessions judge would sit as absolute a despot as the emperor of China."

The ground on which the reasons have been reviewed by the Supreme Court is suggested, rather than expressed, in several cases. In Toole's Appeal, 90 Pa. 376, a license having been refused without reasons given, it was said, Per Curiam: "The grant or refusal of a license is entirely within the discretion of the court. On the face of the record, we see no evidence of the abuse of the discretion." In Conway's Petition, 1 Atlantic 727 ; 1 Cent. Rep. 148, upon a similar refusal coupled with a refusal to file reasons, it was said, Per Curiam: "Much must be left to the discretion of the court to which an application is made for license to sell liquor. Nothing is shown in this case to prove that discretion was not reasonably and properly exercised." In Am. Br. Co.'s License, 161 Pa. 378, where a license was refused for the reason that it was not necessary, and the questions presented were substantially those disposed of in Mead's License, supra, it was said: "For reasons given in that case, *and in the opinion of the court sent up with the record in this case,* we think the learned judge's refusal of the application was in the exercise of a sound legal discretion, and therefore not reviewable here : " STERRETT, C. J. In Mead's License, a wholesale license was refused, and the court below, in an opinion subsequently filed, after a review of the authorities and the evidence in the case, said : " We were clearly of opinion that there was no necessity for more than two wholesale licenses in Du-Bois, and that the applicants were not fit persons to whom such license should be granted, and having had a due regard to the number and character of the petitioners for said license, and considering the facts and information had and obtained as aforesaid, the best interests of the community and of the county at large, and exercising what the court considered sound discretion, the application was refused." Of this the Supreme Court said: " If this is not the exercise of a sound discretion such as is contemplated by the act of 1891, and the decisions of this court, we are unable to say what is meant by the expression. . . . . The right of the judges, in granting licenses such as that in question, to exercise their discretion, cannot be doubted; but, being a legal discretion, it should be exercised wisely, and not arbitrarily. As was said in the case last cited (Raudenbusch's Petition, supra), 'A judge who refuses all applications for license, unless for cause shown, errs as widely as the judge who

grants all applications.' We have no doubt the discretion exercised in this case was both wise and sound: " Sterrett, C. J. In Kelminski's License, supra, a retail license was refused, the court below saying: " The proofs are altogether in favor of the applicant, and if this was an application for a wholesale house, we should feel bound in view of Johnson's License, 156 Pa. 322, to grant it. It is, however, a retailer's application, and, being without knowledge or the means of knowledge, other than that afforded by the petitions filed, we simply refuse the license as per indorsement thereon." The Supreme Court there said: " An arbitrary refusal to grant a license to sell liquors at retail is on the same footing as a like refusal to grant a license to sell them at wholesale. The plainly expressed purpose of the legislation in relation to both is to restrain and regulate the sale of vinous and spirituous, malt and brewed liquors, or any admixture thereof. While there are two classes of licenses provided for in this legislation, the proceedings to obtain them are practically the same in each class, and so is the discretion which the court of quarter sessions has in respect to the grant or refusal of them. . . .

" It seems the court thought its discretion in relation to the grant of a wholesale license was not the same as in an application for a retail license. In other words it was of the opinion that the latter might be arbitrarily refused while the former could not be. We think there is no warrant in law for such a distinction as this. If it once existed it was removed by the Act of June 9, 1891, P. L. 257. It follows from these views that the decision of this court in Johnson's License is applicable to the case at bar, and that upon the admitted facts the license should have been granted:" McCollum, J.

With the exception contained in section 4 of the act of June 9, 1891, " That the provisions of this section as to whether the place to be licensed is necessary shall not apply to a brewer or distiller," the subject-matter with respect to which the discretion of the license court is to be exercised is now uniform as to all licenses.

The principle on which the reasons given by the court below may be reviewed by the appellate court appears obvious. Being assigned as the ground of the decision, they are to be examined in order that it may appear whether the discretion exercised by

the court has been judicial or arbitrary; whether there has been an abuse of discretion; whether in short, the court "has proceeded according to law." Where no reasons are given, the presumption is that the court performed its duty according to law: Gross's License, supra. But when reasons are set out as the basis of the decision they must be of a character recognized in law as valid, such as the lack of any of the requisites prescribed by statute to entitle the applicant to a license. The absence of any of these is to be determined by the license judge from the evidence, or from his own knowledge, and we cannot review his conclusions of fact in the premises. He is to decide the application upon his knowledge or judgment as to the existence or nonexistence of the conditions fixed by the legislature. When he does this, he exercises a judicial discretion; when he acts on reasons having no relation to these conditions, he exercises an arbitrary discretion. The word "arbitrary" in this connection is used in no offensive sense, but to signify a decree based on reasons other than those indicated by the statute: Pollard's Petition, supra. When the license judge departs from the line of inquiry fixed by law, and bases his action on reasons wholly irrelevant under the statutory requirements, he passes beyond the scope of judicial discretion. The assignment of such reasons proves the absence of the legal reasons he is bound to have, and the action based on them is an abuse of discretion, being not judicial but arbitrary. An abuse of discretion is not a proceeding according to law, but is contrary to law. Such a proceeding obviously belongs to the class of "extreme cases," in which it was pointedly intimated by Mr. Justice WILLIAMS, in Knarr's Petition, supra, the discretion of the license court may be revised and that of the appellate court substituted. When it appears that the license judge has acted on reasons which the law does not recognize as valid, his action stands on no legal basis and it is the duty of the appellate court to correct it. It is on this principle, apparently, that the Supreme Court has reviewed the decrees of the license courts; affirming them in the absence of anything showing an abuse of discretion, or when the reasons given show a judicial exercise of discretion; reversing them, and substituting its own discretion for that of the license court, when it appears from the reasons given that the latter court has not proceeded ac-

cording to law, but has abused the discretion committed to it by a departure from the standard created by the statutory provisions.

The action of this court, in reviewing the proceedings of the license courts, has been governed by the same principle: Doberneck's License, 1 Pa. Superior Ct. 99; Brewing Co.'s Appeal, 1 Pa. Superior Ct. 627; Doberneck's Appeal, 1 Pa. Superior Ct. 637; Gross's License, 1 Pa. Superior Ct. 640; Babb's License, 2 Pa. Superior Ct. 38; Lauck's Appeal, 2 Pa. Superior Ct. 53; Kern's Appeal, 2 Pa. Superior Ct. 59; Fowler's License, 2 Pa. Superior Ct. 63.

Further review of the cases on this subject is unnecessary. In more than thirty, the decree of the license court is affirmed, either because, in the absence of reasons, no abuse of discretion appears, or because the reasons given exhibit an exercise of judicial discretion, in conforming to the statutory tests. The instances in which the decree is reversed, for reasons showing an abuse of discretion, are upon the petitions of Pollard, 127 Pa. 507; Prospect Brewing Co., 127 Pa. 523; Johnson, 156 Pa. 322; Kelminski, 164 Pa. 231; Gemas, 169 Pa. 43; Doberneck, 1 Pa. Superior Ct. 99; Babb, 2 Pa. Superior Ct. 38. Examples of both classes have already been cited at sufficient length to illustrate the application of the principle on which the decisions of the appellate court have rested.

The validity, in law, of the reasons given for refusing a license in the present case—that is to say, the nature of the discretion exercised by the license court—remains to be considered. One of the two judges composing the court was of opinion that the license should be granted, while the assent of the other was withheld, for the reason, as stated by him, that the applicant had "made a promise last year not to apply for a license this year," and the present application was in disregard of that promise. Though not expressly stated, it is to be implied that the promise was made to the court, in consideration of the grant of a license last year. For a court thus to bargain with a suitor is a proceeding wholly unwarranted by law, nor is there any ground on which it may be commended. Such a practice introduces matters not contemplated by the statute. It is not a statutory requirement that an applicant for license shall agree not to apply a second time. Had the appellant's application

last year been rejected, and a refusal to promise not to apply again assigned as the reason, a more arbitrary and a less judicial exercise of discretion could scarcely be imagined. The right to make successive applications from year to year is without legal restriction, and the constitution provides that all courts shall be open, and right and justice administered without sale, denial or delay. The right to ask at any time for a license rests on the ground of compliance with the legal requirements, and each application should be decided solely with reference to the conditions existing when it is heard. If these are such as to entitle the applicant to a license, it should be granted; if not, it should be refused; and in either case without reference to the applicant's action respecting a future application. If there is such a compliance with the statutory provisions that a license should be granted, neither an apprehension that it might become improper to grant a license a year later, nor a promise by the applicant on a former hearing, not to make another application, can be recognized as a legal reason for refusing it. Nor can we concur in the view of the dissenting license judge, growing out of the reason given for rejecting the present application, that the applicant's disregard of the promise referred to stamps his moral character as bad. Had the promise been purely voluntary, it would have been in effect only an expression of his intention, with no legal ground for holding him to its observance; and such declaration of intention not being required by law, there is as little ground for holding him to it when imposed by the court. The distinguished counsel for the appellant has logically demonstrated that there is an aspect of duress in the action of the court requiring the applicant to give such a promise; and duress by the court imposes no greater obligation than duress by a private person: Horstman v. Kaufman, 97 Pa. 147. We are unable to perceive any element of moral turpitude in the nonobservance of a promise exacted without warrant of law, or to regard it as exhibiting a lack of the good moral character which the statute requires of an applicant for a license. Aside from this promise, there was no evidence before the court as to the applicant's moral character, and there is no assertion that the dissenting license judge acted on personal knowledge of it. We must regard the reason given for refusing the license as insufficient under the statute, and as showing the exercise of an

arbitrary instead of a judicial discretion. The dissenting judge having based his refusal solely on this reason, it must be assumed that no other exists ; and as the reason given for rejecting the application is without validity in law, it follows that the license should have been granted.

The order refusing a license in this case is reversed, and it is ordered that a license be issued by the court below as prayed for upon payment by the applicant of the license fees fixed by law.

RICE, P. J., DISSENTING.

I concur fully with my brethren that the act of the petitioner in applying for a license notwithstanding the stipulation filed by him the year before was not an immoral act, and therefore did not of itself show him not to be a man of good moral character. But I am unable to assent to the order about to be made for the following reasons :

First. Where an appeal is a mere substitute for a certiorari the opinion of the court below especially if not referred to in the order or decree as containing the reasons for its action, is not brought up for review and is not before us for any purpose ; it is not part of the record. Although it must be conceded that this rule has apparently been departed from in rare instances, yet I maintain that it is sustained by the great weight of authority. A fortiori the oral remarks of the judges made on the hearing in the court below are not part of the record although afterwards reduced to writing and filed by their direction. But, second, even if there is enough on the face of the record to warrant us in reversing the order, it seems to me that looking at the whole proceeding as disclosed in the official report of the hearing the reversal should not be accompanied by an imperative direction to grant the license ; for we have no means of knowing what testimony might have been offered if the hearing had not been practically closed by the ruling of the court upon the only question considered by the judges.